UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VINCENT PINA, | ) | Case No. 3:09CV776 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| DEBORAH TIMMERMAN-COOPER, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent. | ) | **Report and Recommendation** |
| | ) | **of Magistrate Judge** |
| | ) | |
| | ) | |

Petitioner Vincent Pina ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Dkt. #1. Petitioner seeks relief for alleged constitutional violations that occurred during his Hancock County, Ohio Court of Common Pleas[1] convictions for aggravated assault, sexual battery, aggravated burglary, and kidnapping. ECF Dkt. #1; ECF Dkt. #7, Ex. 1,2, 14, 15. On August 20, 2009, Respondent Deborah Timmerman-Cooper ("Respondent"), the Warden of London Correctional Institution where Petitioner is currently incarcerated, filed an answer. ECF Dkt. #7. On November 12, 2009, Petitioner filed a traverse. ECF Dkt. #11.

---

[1] The Petition alleges that the convictions challenged originated from "Hancock County Court of Common Pleas, **Findlay County**, Ohio." ECF Dkt. #1 (emphasis added). Since Petitioner is not housed in the Northern District of Ohio, it is important to determine which court imposed his sentence for federal habeas jurisdictional purposes. *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("§ 2241(d) provides that when a petitioner is serving a state criminal sentence in a State that contains more than one federal district, he may file a habeas petition not only 'in the district court for the district wherein [he] is in custody,' but also 'in the district court for the district within which the State court was held which convicted and sentenced him'; and 'each of such district courts shall have concurrent jurisdiction to entertain the application.' "). There is no county named Findlay within Ohio. The record in this case clearly demonstrates that Petitioner's conviction was lodged by the Hancock County Court of Common Pleas. Thus, it appears that this allegation in the petition is a typographical error and Petitioner's conviction did originate within this District.

On January 18, 2011, the instant case was assigned and referred to the undersigned for a Report and Recommendation.  For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice and DENY Petitioner's motion to stay as MOOT:

## I.    SYNOPSIS OF THE FACTS

The Third District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999).  As set forth by the Ohio Court of Appeals, the facts are:

{¶ 2} Pina's convictions stem from two separate incidents. In case number 2002-CR-164, Pina engaged in an argument with his then girlfriend, Kelly Powell. The argument escalated and Pina allegedly struck Powell with a golf club, resulting in injury. Pina was indicted on two counts of Felonious Assault as a result of this incident and released on bond.

{¶ 3} In case number 2003-CR-69, while out on bond, Pina allegedly broke into the home of Teresa Stanforth, Pina's former girlfriend and the mother of his child. The state alleged that Pina broke in, taped Stanforth's mouth, held her down, threatened her and engaged in non-consensual anal intercourse. Pina was subsequently indicted on one count of Rape, one count of Aggravated Burglary, one count of Kidnapping and one count of Possession of Criminal Tools.

{¶ 4} On October 20, 2003, in case number 2002-CR-164, Pina pled guilty to the lesser included offense of Aggravated Assault, a felony of the fourth degree. The second count of Felonious Assault was dismissed. The same day, in case number 2003-CR-69, Pina pled guilty to Sexual Battery, a third degree felony; Aggravated Burglary, a first degree felony; and Kidnapping, a first degree felony. The count of Possession of Criminal Tools was dismissed. The trial court found Pina guilty of each offense and set the cases for sentencing for January 15, 2004.

{¶ 5} On January 15, 2004, Pina came before the court for sentencing. At the hearing, however, Pina fired his attorney and sentencing was continued until February 5, 2004. The case was subsequently continued four more times while Pina was attempting to retain counsel and was finally set for sentencing on April 8, 2004.

{¶ 6} On April 7, 2004, the day before the sentencing hearing, Pina filed a motion to withdraw his guilty pleas. A hearing was held on the motion to withdraw on May 20, 2004 and August 5, 2004. In an entry journalized on September 16, 2004, the trial court overruled Pina's motion.

{¶ 7} Pina was finally sentenced on November 10, 2004. In case number 2002-CR-164, Pina was sentenced to fourteen months in prison for Aggravated Assault. In case number 2003-CR-69, the trial court sentenced Pina to four years for Sexual Battery, seven years for Aggravated Burglary and five years for Kidnapping.

The trial court ordered all the terms to be served consecutively for a total term of seventeen years, two months.

ECF Dkt. #7, Ex. 28 at ¶¶ at 2-7; *State v. Pina*, No. 5-04-55, 5-04-56, 2005 WL 1503950 (Ohio App. 3d Dist. June 27, 2005), unreported.

## II.     PROCEDURAL HISTORY

### A.     State Trial Court Proceedings

In September, 2002, the Hancock County, Ohio prosecuting attorney filed an indictment charging Petitioner with two counts of Felonious Assault in violation of Ohio Revised Code ("O.R.C.") §§ 2903.11(A)(1) & (2).  ECF Dkt. #7, Ex. 1.  Thereafter, the prosecuting attorney filed a second indictment, charging Petitioner with one count of Rape in violation of O.R.C. § 2907.02(A)(2); once count of Aggravated Burglary in violation of O.R.C. § 2911.11(A)(2); one count of Kidnapping in violation of O.R.C. § 2905.01(A)(4); and one count of Possession of Criminal Tools in violation of O.R.C. § 2923.24(A).  ECF Dkt. #7, Ex. 3.  On May 5, 2003, the prosecuting attorney filed a motion to consolidate the trials against Petitioner.  ECF Dkt. #7, Ex. 5, 6.  Petitioner filed an opposition.  ECF Dkt. #7, Ex. 7.

On June 5, 2007, Petitioner filed a motion to suppress any and all items seized as a result of a search of his residence on September 10, 2002.  ECF Dkt. #7, Ex. 8.  He also filed a notice of an affirmative defense, indicating that he would be asserting self defense at trial.  ECF Dkt. #7, Ex. 9.

On October 20, 2003, the prosecuting attorney filed a motion to dismiss count two of the earlier-filed indictment and count four of the later-filed indictment due to plea negotiations.  ECF Dkt. #7, Ex. 10, 11.  That same day, Petitioner executed a written plea agreement in each case.  ECF Dkt. #7, Ex. 12, 13.  The trial judge issued entries adjudging Petitioner guilty of Aggravated Assault, Sexual Battery, Aggravated Burglary, and Kidnapping.  ECF Dkt. #7, Ex. 14, 15.

On April 7, 2004, Petitioner filed a motion for leave to withdraw his guilty pleas.  ECF Dkt. #7, Ex. 16.  The trial court held two evidentiary hearings on the motion.  ECF Dkt. #7, Ex. 47-1, 47-2.  Thereafter, Petitioner filed a post-hearing brief.  ECF Dkt. #7, Ex. 1 7.  On September 14, 2004, the trial court denied Petitioner's motions to withdraw his guilty pleas.  ECF Dkt. #7, Ex. 18.

On November 10, 2004, the trial judge sentenced Petitioner to an aggregate term of 17 years and 2 months in prison.  ECF Dkt. #7, Ex. 19, 20.  This sentence was the product of a 14 month term for his Aggravate Assault conviction, along with a 4 year term for his Sexual Battery conviction, a 7 year term for his Aggravated Burglary conviction, and a 5 year term for his Kidnapping conviction, all to be served consecutively.  *Id*.  Petitioner was also adjudged a sexually oriented offender.  ECF Dkt. #7, Ex. 21.

### B.  Direct Appeal

On December 17, 2004, Petitioner filed a notice of appeal and thereafter filed an appellate brief raising the following assignments of error:

I.   The trial court erred by imposing a void sentence.

II.  The trial court erred by imposing non-minimum sentences without making the appropriate findings.

III. The trial court erred by imposing consecutive sentences without clearly aligning its reasons with its findings.

IV.  The trial court erred by sentencing Pina based on facts not found by the jury or admitted by Mr. Pina.

V.   The trial court erred by denying Mr. Pina's presentence motion to withdraw his plea.

ECF Dkt. #7, Ex. 22, 23, 25.  The appellate court consolidated the cases sua sponte.  ECF Dkt. #7, Ex. 24.  On March 23, 2005, the state filed a brief in opposition.  ECF Dkt. #7, Ex. 26.  On April 11, 2005, Petitioner filed a reply brief.  ECF Dkt. #7, Ex. 27.

On June 27, 2005, the Third District Court of Appeals affirmed in part and reversed in part the trial court's judgment.  ECF Dkt. #7, Ex. 28.  The court found no error in the trial court's denial of Petitioner's motion for leave to withdraw his guilty plea, no error in the imposition of more than minimum sentences, no error in imposing consecutive sentences, and no error in the imposition of a sentence without presenting the case to a jury.  *Id*. The appellate court did find error in the trial court's failure to advise Petitioner of post-release control in open court at the time of sentencing. *Id*. The appellate court remanded the case for resentencing.  *Id*.

On August 11, 2005, Petitioner filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #7, Ex. 29.  He contemporaneously filed a memorandum in support of jurisdiction, raising the

-4-

following propositions of law:

I.      When a court of appeals remands a case for resentencing because the trial court failed to include postrelease control in the sentence, the resentencing is a resentencing de novo.

II.     A trial court may not impose non-minimum or consecutive prison terms in the absence of jury findings of the factors set forth in R.C. 2929.14(B), R.C. 2929,14(C) and 2929.14(E).

III.    A trial court should grant a presentence plea withdrawal motion when the plea was involuntary.

ECF Dkt. #7, Ex. 30.  On September 9, 2005, the state filed a brief opposing jurisdiction.  ECF Dkt. #7, Ex. 31.  The Supreme Court of Ohio accepted jurisdiction on Propositions I and II.  ECF Dkt. #7, Ex. 32.  Thereafter, the court reversed the appellate court's judgment and remanded the case for resentencing in accordance with *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (Ohio 2006), *discussed infra*.  ECF Dkt. #7, Ex. 33.

    **C.**       **Resentencing**

On September 7, 2006 the trial court resentenced Petitioner in accordance with the appellate court's decision.  ECF Dkt. #7, Ex. 34-35.  The trial court imposed the same aggregate term of 17 years and 2 months of imprisonment.  *Id*.

On October 30, 2006, Petitioner filed a notice of appeal to the Third District Court of Appeals.  ECF Dkt. #7, Ex. 36, 37.  Petitioner filed a brief on the merits raising the following assignments of error:

I.      The trial court erred by imposing postrelease control.

II.     The trial court erred by imposing non-minimum, consecutive prison sentences.

ECF Dkt. #7, Ex. 38.  The state filed a brief in opposition.  ECF Dkt. #7, Ex. 39.  Petitioner filed a reply brief.  ECF Dkt. #7, Ex. 40.  On September 5, 2007, the appellate court affirmed Petitioner's sentence.  ECF Dkt. #7, Ex. 41.

On October 22, 2007, Petitioner filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #7, Ex. 42.  Petitioner's memorandum in support of jurisdiction raised the following propositions of law:

I.      Postrelease control violates the separation of powers because Am.Sub.H.B. 137 permits the executive to impose the sanction without a court order.

II.     A defendant may not be resentenced pursuant to a sentencing scheme in which the presumptive minimum sentence has been eliminated subsequent to the commission of the underlying crime.

ECF Dkt. #7, Ex. 43.  On February 8, 2008, the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question.  ECF Dkt. #7, Ex. 44.

Petitioner filed a motion for reconsideration of the court's denial of jurisdiction on Proposition of Law Number 1. ECF Dkt. #7, Ex. 45.  On April 9, 2008, the court denied Petitioner's motion.  ECF Dkt. #7, Ex. 46.

### D.     28 U.S.C. § 2254 Petition

On April 3, 2009, Petitioner filed the instant petition for a writ of habeas corpus.  ECF Dkt. #1.  Petitioner raises the following grounds for relief:

**Ground One:**

The application of the post-release control provision to Petitioner's sentence violates the Constitutional provision for separation of powers.

**Ground One [sic]:**

Petitioner's right to due process of law and the protection against the imposition of Ex Post Facto Law was violated when the trial court sentenced him to consecutive non-minimum sentences in violation of the Due Process and Ex Post Facto Clauses of the United States Constitution.

**Ground Two:**

Mr. Pina's plea was not knowing, intelligent and voluntary, and therefore violates his right to a jury trial, his right to be found guilty only upon proof beyond a reasonable doubt, his right to the effective assistance of counsel, and his right to Due Process under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

ECF Dkt. #1.  On August 12, 2009, Respondent filed an answer.  ECF Dkt. #7.  On November 12, 2009, Petitioner filed a traverse.  ECF Dkt. #11.

In his traverse, Petitioner acknowledges that the inclusion of two claims labeled "Ground One" was an error.  ECF Dkt. #11 at 1.  Petitioner has withdrawn the first claim labeled "Ground One," which pertains to separation of powers.  *Id.*  Therefore, any references to "Ground One" will refer to Petitioner's Ex Post Facto and Due Process Claim, stated above.  Additionally, in light of the United States Supreme Court's decision in *Oregon v. Ice*, Petitioner has withdrawn any challenge to the consecutive nature of his sentences. ECF Dkt. #11 at 2; *Oregon v. Ice*, 129 S.Ct.

-6-

711, 718 (2009)("In light of this history, legislative reforms regarding the imposition of multiple sentences do not implicate the core concerns that prompted our decision in *Apprendi*.").

### III. **PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

Respondent concedes that no procedural bars apply in this case.  ECF Dkt. #7 at 11-15. Therefore, the undersigned will not address the issue in further detail.

### IV. **STANDARD OF REVIEW**

The AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A.   Decisions of lower federal courts may not be considered.

> B.   Only the holdings of the Supreme Court, rather than its dicta, may be considered.

> C.   The state court decision may be overturned only if:

>> 1.   It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

>> 2.   the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

>> 3.   'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

>> 4.   the state court 'either unreasonably extends a legal principle

-8-

> from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

> D.     Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

> E.     Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by

clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V.  ANALYSIS

### A.  Ground One

In his first Ground for Relief, Petitioner alleges that his sentence is illegal because the jury did not determine the facts needed to support the sentence imposed.  ECF Dkt. #1 at 15.  Petitioner reasons that, at the time he was sentenced, no court could impose more than minimum sentences because only a jury can make the findings necessary for such sentences.  *Id*.  Petitioner further contends that when the Supreme Court of Ohio decided *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), and severed unconstitutional sentencing provisions that were based upon judicially mandated fact finding, the court violated the Ex Post Facto and Due Process Clauses of the Federal Constitution by changing presumptive sentencing.

The undersigned recommends that the Court find that Ground One lacks merit.  Several courts in this district, have rejected Petitioner's argument and held that courts could impose more than minimum sentences in resentencing following *Foster*.  *See*, *e.g.*, *Orwick v. Jackson*, Case No. 3:09CV232, 2009 WL 4043352 (N.D. Ohio Nov. 20, 2009), unreported; *Ross v. Kelley*, No. 5:08CV2889, 2009 WL 3208668 (N.D. Ohio Oct. 5, 2009), unreported; *Kravochuck v. Shewalter*, No. 1:09CV199, 2009 WL 3208663 (N.D. Ohio Oct. 5, 2009), unreported; *Watkins v. Williams,* Case No. 3:07CV1296, 2008 WL 2484188 (N.D.Ohio June 17, 2008);  *McGhee v. Konteh*, No. 1:07CV1408, 2008 WL 320763 (N.D.Ohio Jan. 25 2008), unreported.  *Woody v. Welch*, No. 3:08CV2534, 2009 WL 1440828 (N.D. Ohio, May 20, 2009), unreported.

#### 1.  Pertinent Law

Prior to Petitioner's initial sentencing, the U.S. Supreme Court decided *Apprendi* and held that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.  *Apprendi*, 530 U.S. at 490.  In 2004, the U.S. Supreme Court decided *Blakely* and held that the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely

on the basis of the facts reflected in the jury verdict or admitted by the defendant, and not the maximum sentence a judge may impose after finding additional facts. *Blakely*, 542 U.S. at 303.

At the time Petitioner was convicted, the Ohio Revised Code allowed for a sentence of three to ten years for felonies of the first degree (which include Aggravated Burglary and Kidnapping), two to five years for felonies of the third degree (which include Sexual Battery), and six to eighteen months for felonies of the fourth degree (which include Aggravated Assault).  O.R.C. § 2929.14(A)(1).  However, the Revised Code further provided that:

> (B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
>
> > (1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
> >
> > (2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.

O.R.C. § 2929.14(B) (West 2004).  On February 27, 2006, the Supreme Court of Ohio consolidated four criminal cases in an opinion styled *State v. Foster* and held, *inter alia*, that R.C. § 2929.14(B) was unconstitutional because it "require[d] judicial fact-finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant." *Foster*, 845 N.E.2d at 495.  The Supreme Court of Ohio went on to remedy the error by severing the unconstitutional mandatory judicial factfinding provisions:

> [R]eferences to mandatory judicial fact-finding properly may be eliminated in the four areas of concern. Without the mandatory judicial fact-finding, there is nothing to suggest a "presumptive term." To explain Ohio's "statutory maximum" for purposes of Apprendi and its progeny, the maximum prison term authorized by the jury verdict or the facts admitted by a defendant upon acceptance of a plea is the top of the sentencing range for the crime of which the defendant is convicted. For example, if the offender is convicted of a first-degree felony, the "statutory maximum" is ten years under R.C. 2929.14(A)(1).

*Id*. at 497.

### 2.      Application of law to Petitioner's case

Petitioner contends that the trial court on resentencing should have imposed a minimum sentence under pre-*Foster* sentencing scheme.  ECF Dkt. #1 at 15-16.  In his traverse, Petitioner explains his due process and ex post facto arguments in more detail.  ECF Dkt. #11 at 2-11.  To the extent Petitioner's claim implicates the Ex Post Facto Clause, it lacks merit because the Supreme Court of Ohio is not a legislature bound by the Ex Post Facto Clause.  The Ex Post Facto Clause is contained in Article I of the federal constitution, which pertains to legislative powers.  And the United States Supreme Court made clear in *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001),  "As the text of the [Ex Post Facto] Clause makes clear, it is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government. . . We have observed, however, that limitations on ex post facto judicial decisionmaking are inherent in the notion of due process."   This Court has held that a petitioner cannot state a claim under the Ex Post Facto *Clause* for the Ohio Supreme Court's retroactive application of a judicially modified statute because the Ohio court is not a legislature.  *See Orwick,* 2009 WL 4043352 at *4; *see also Ross*, No. 5:08CV2889, (N.D. Ohio Oct. 5, 2009) (ECF Dkt. #10, Limbert, M.J.  R&R at 42-44 "that if a law is improperly made retroactive by a court, a Petitioner's remedy, if he has one, lies in the Due Process Clause, not the Ex Post Facto Clause. . . *Rogers* makes clear that the pertinent question for determining whether a petitioner has a valid Ex Post Facto Clause claim is which branch of government committed the alleged constitutional violation. Here, Petitioner alleges that the judicial branch violated his constitutional rights; therefore his claim under the Ex Post Facto Clause lacks merit. . .The fact that the *Foster* court may have acted akin to the legislature does not make the Supreme Court of Ohio a legislature.  It remains true that 'As the text of the [Ex Post Facto] Clause makes clear, it is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government.' " *Rogers*, 532 U.S. at 456.") (ECF Dkt. #12 Nugent, J., Adopting  R&R.); *Kravochuck*, 2009 WL 3208663;  *McGhee v. Konteh*, 2008 WL 320763.  The Honorable Solomon Oliver, Jr. has held the same: "the trial court's use of the sentencing statute re-shaped by *Foster* in sentencing Woody did not violate due process or the Ex Post Facto Clause

-12-

of the Constitution." *Woody*, 2009 WL 1440828 at *10 (N.D. Ohio, May 20, 2009), unreported.

Since Petitioner's Ex Post Facto Clause claim lacks merit, the undersigned recommends that the Court dismiss Ground One of the instant petition to the extent that it asserts a violation of the Ex Post Facto Clause.

To the extent Petitioner claims that the Ohio courts violated his Due Process rights by retroactively applying the post-*Foster* sentencing statute to his case to impose non-minimum sentences, the undersigned recommends that the Court find that his claim lacks merit.  Both Judge Nugent and Judge Oliver of this Court have rejected similar claims in other cases, holding that no constitutional violation arose with the retroactive application of  the post-*Foster* sentencing statute on remand to a petitioner who was improperly sentenced under the pre-*Foster* statute.  *See Ross*, No. 5:08CV2889; *Kravochuck*, No. 1:09CV199;  *McGhee*, No. 1:07CV1408, 2008 WL 320763; *Woody*, 2009 WL 1440828 at *10 ("A number of federal defendants have alleged that the federal sentencing statutes reshaped by *Booker* violate due process because they subject defendants to ex post facto laws. Those challenges have been universally rejected. . . Woody makes no argument that distinguishes in any relevant respect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts.")  (internal citations omitted).  Judge Adams adopted a similar position in *Watkins*.

Turning to the case at bar, the stated statutory range remained unchanged (3-10 years for first degree felonies; 2-5 years for third degree felonies; and 6-18 months for fourth degree felonies).  Therefore, Petitioner had notice of the penalty he could receive for the crimes he committed.  The undersigned believes that  the issue is whether Petitioner was ultimately sentenced under a statute that provided the judge with sentencing discretion, and did not impose presumptions or mandate judicial factfinding.   In this case, the post-*Foster* sentencing statutes afforded the trial judge sentencing discretion within a statutory range, which permitted him to exceed 3 years for first degree felonies, 2 years for third degree felonies, and 6 months for fourth degree felonies.  Therefore,  the trial court did not violate Petitioner's due process rights when it resentenced him within that range.

-13-

For the foregoing reasons, the undersigned recommends that the Court dismiss Ground One in its entirety due to a lack of merit.

### B.      Ground Two

In Ground Two, Petitioner claims that his guilty pleas were not knowingly, intelligently, and voluntarily made.  ECF Dkt. #1 at 16-19.   To be valid, a guilty plea must be made voluntarily and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994).   The plea must be made with knowledge of the "relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970); *King*, 17 F.3d at 153. The defendant need only be aware of the direct consequences of the plea, however; the trial court is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea.  *King*, 17 F.3d at 153; *Brown v. Perini*, 718 F.2d 784, 788-89 (6th Cir.1983). Determining whether a plea was made voluntarily requires an evaluation of all the relevant circumstances surrounding the plea.  *King*, 17 F.3d at 153; *Caudill v. Jago*, 747 F.2d 1046, 1050 (6th Cir.1984); *Brown,* 718 F.2d at 786.  The "ultimate question" is if the plea was in fact voluntary and intelligent. *King*, 17 F.3d at 153; *Pitts v. United States*, 763 F.2d 197, 200 (6th Cir.1985).

Plaintiff attributes his involuntary plea to ineffective representation by trial counsel.  ECF Dkt. #1 at 16-19.  To support a claim that a guilty plea was involuntary due to ineffective assistance of trial counsel, a petitioner must show that (1) counsel's performance was deficient, and (2) there is a reasonable probability that, but for counsel's errors, he would not have plead guilty, but would have insisted on going to trial.  *Hill v.  Lockhart*, 474 U.S. 52, 58-9 (1985).

Petitioner offers several reasons in support of his contention that counsel was ineffective.  The state appellate court considered the record and found that the trial court's colloquy with Petitioner was "exceedingly thorough."  ECF Dkt. #7, Ex. 28 at ¶12.  There is no reason to believe this determination was unreasonable.  Petitioner stated explicitly during the plea colloquy that he was satisfied with counsel's representation:

> **THE COURT:**         Mr. Pina, you have been represented by I think a local attorney,
>                          Mr. Fitzgerald, for a period of time.  I think you were

-14-

> represented by the Public Defender for a period of time.  Been represented most recently by Mr. Cameron.  Are you satisfied with the services of Mr. Cameron as your attorney in this case?
>
> **THE DEFENDANT:**  Yes, sir.
>
> **THE COURT:**  Any questions at all?  Anything at all about being an unhappy camper I need to know about right now, not after sentencing.  Anything we need to talk about?
>
> **THE DEFENDANT:**  No, sir.

ECF Dkt. #8 (Ex. 49) at 45; *see also id*. at 46.  Additionally, both of the written, signed plea agreements represent that Petitioner was satisfied with his attorney's advice, counsel, and competence.  ECF Dkt. #7, Ex. 12 at 2, Ex 13 at 2.  In the face of this record, Petitioner now claims that his attorney "cajoled" him into pleading guilty and by the time the trial court engaged him in a Rule 11 colloquy, his will to insist upon a jury trial was gone.  ECF Dkt. #1 at 18; #11 at 15.

The record simply does not support Petitioner's assertions.  "The purpose of a plea colloquy is to protect the defendant from an unintelligent or involuntary plea."  *Mitchell v. U.S.*, 526 U.S. 314, 323 (1999).  There is not reason to believe that a failure of that mechanism occurred here.  The trial judge engaged Petitioner in a direct dialogue regarding his satisfaction with counsel's representation, and he provided Petitioner with clear opportunities to voice any dissatisfaction.  Petitioner affirmatively stated that he was satisfied and had no objections.  There is no reason to believe now that Petitioner was prejudiced by counsel's representation, as opposed to simply having a change of heart after entering a binding agreement.

To overcome the evidence of record, Petitioner contends that, at an evidentiary hearing  on a motion to withdraw the guilty pleas, trial counsel testified that he was not prepared for trial and would have requested a continuance of the trial date if Petitioner did not plead guilty.  ECF Dkt. #11 at 13-14.  He also contends that he gave his lawyer the names of approximately 25 to 30 witnesses to be interviewed, but he believes they were not interviewed.  *Id*. at 13.  This claim falls short of establishing entitlement to relief under *Hill*.

-15-

Petitioner has failed to prove either deficient performance or prejudice.  He has not identified any of the witnesses counsel allegedly failed to interview.  Further, Petitioner has presented no evidence showing that these witnesses possessed any information that was relevant or significant.  Therefore, the Court has no way of concluding that counsel acted unreasonably in not interviewing these individuals or that Petitioner would have insisted on going to trial but for counsel's alleged failure to interview these witnesses.  The undersigned recommends that the Court find no merit to Petitioner's claim regarding counsel's purported failure to interview witnesses.

Petitioner has also failed to demonstrate that counsel's plan to request a trial continuance constituted deficient performance.  He does not demonstrate that there would have been any difficulty associated with requesting a continuance on the day of trial. Further, Petitioner has not demonstrated that he was aware of counsel's proposed course of action at the time he decided to plead guilty.  Petitioner has not demonstrated that counsel's proposed course of action weighed on his decision to plead guilty in any way.  Instead, Petitioner merely attempts to cast his attorney's consultation on the eve of trial as a necessary visit for the purpose of "persuad[ing], or cajol[ing] him into pleading guilty" so that counsel could avoid trial.  ECF Dkt. #1 at 18.

Contrary to Petitioner's assertions, the record demonstrates that trial counsel met on the eve of trial to present him with a carefully negotiated plea agreement.  Trial counsel successfully negotiated to have one count of Felonious Assault dismissed, and the other reduced to Aggravated Assault.  ECF Dkt. #7, Ex. 12; Ex. 28 at ¶¶1-4.  He also successfully negotiated to have a Rape charge reduced to Sexual Battery and to have a Possession of Criminal Tools charge dismissed. ECF Dkt. #7, Ex. 13; Ex. 28 at ¶¶1-4.  Notably, if Petitioner was convicted on the original indictments at trial, he would have faced terms of eight years for each of two Felonious Assault charges, ten years for Rape, ten years for Aggravated Burglary, ten years for Kidnapping, and one year for Possession of Criminal Tools.  *See* ECF Dkt. #7, Ex 1, 2; O.R.C. § 2929.14(A)(1).  Therefore, Petitioner could have faced an aggregate term of 47 years if convicted at trial.  *See Ice*, 129 S.Ct. at 718.  Thus, the record does not support a contention that counsel met with Petitioner in order to "cajole" him into pleading guilty and avoid a jury trial.

-16-

Petitioner takes issue with the fact that trial counsel did not know "what sort of sentence Mr. Pina would receive by virtue of his negotiated plea." ECF Dkt. #11 at 14.  Petitioner considers this fact to be "most telling" of trial counsel's alleged deficient performance and coerciveness.  *Id*.  He contends that he was facing a substantial liability because he pleaded guilty to two first degree felonies, a third degree felony, a fourth degree felony, and a fifth degree felony. ECF Dkt. #11 at 14.[2]  However, Petitioner does not present all of the facts.   Defense counsel also testified that he attempted to negotiate a sentence and the prosecutor would only stipulate to recommend a 17 year term, which he did not find acceptable. ECF Dkt. #47-2 at 37.  Therefore, he said that he was going to leave sentencing in the judge's discretion.  *Id*.  Importantly, he testified that he told Petitioner he was going to do so.  *Id*.  Further, Petitioner's argument fails to acknowledge that his attorney obtained charge reductions that certainly affected the potential sentencing range compared to what Petitioner would have faced had he proceeded to a jury trial under the original indictments.  Further, this is not a situation where counsel failed to research a potential sentence; the prosecution and defense simply were not able to agree on a negotiated sentence. ECF Dkt. #8 at 21.  In fact, the trial judge ordered a presentence investigation report.  *Id*. at 47.  Even if counsel's performance was deficient, Petitioner cannot demonstrate prejudice because the trial judge explained all of the potential sentencing options to him, concluding that he could receive an aggregate term of 26 ½ years of imprisonment.  ECF Dkt. #8 at 17-20.

Petitioner contends that when he pled guilty, he did not know whether he would receive a sentence of "virtually thirty years incarceration or only three years, depending on whether the Court gave him maximum consecutive sentence or minimum concurrent sentences."  ECF Dkt. #11 at 15.  Petitioner contends that this is a measure of how much he surrendered to his lawyer's persuasion, as opposed to a measure of his acquiescence.  *Id*.  Nevertheless, Petitioner entered his plea after the judge advised him in open court of the full range of penalties.

When viewed objectively, the record shows that Petitioner was presented with a reasonable alterative to a potentially higher penalty following trial, and he chose to plead guilty.  The

---

[2]     This is Petitioner's contention, but he did not plead guilty to a fifth degree felony.

undersigned sees no basis for concluding that his plea was made involuntarily or unintelligently.

**VI.     CONCLUSION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


DATE: February 24, 2011                                        *s/ George J. Limbert*
                                                               GEORGE J. LIMBERT
                                                               UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).